<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| PHAT VAN LE | : | **Civil Action No. 08-991 (SRC)** |
| | : | |
| Plaintiff, | : | |
| | : | **OPINION** |
| v. | : | |
| | : | |
| UNIVERSITY OF MEDICINE AND | : | |
| DENTISTRY, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

**<u>CHESLER</u>**, District Judge

This matter comes before the Court upon two motions for summary judgment.  One motion was filed by Defendants Kevin Lehnes, Monique Braatz, Ryan Palmitesso and Jean McCrossan (collectively, the "Student Defendants") [docket item no. 16].  The other was filed separately by Defendants University of Medicine and Dentistry of New Jersey ("UMDNJ" or the "University"), the New Jersey Dental School (the "Dental School"), and Doctors Nicholas Conte, Harold Zohn and Gary Vitalleti (collectively, the "University Defendants") [docket item no. 24]. Plaintiff Phat Van Le ("Plaintiff" or "Le") has opposed the motions.  Though the Student Defendants filed their motion pursuant to Rule 12(b)(6), for dismissal of the claims for failure to state a claim upon which relief could be granted, and the University Defendants filed their motion pursuant to Rule 12(c) for judgment on the pleadings,[1] the Court converted the motions to

---

[1] A motion for judgment on the pleadings differs from a Rule 12(b) motion only in the timing of the motion; while a Rule 12(b) motion is filed in lieu of an Answer, a Rule 12(c) motion may be brought after the Answer is filed.  Both entail an evaluation of the Complaint under the same standard.  <u>Turbe v. Gov't of the V.I.</u>, 938 F.2d 427, 428 (3d Cir. 1991).

Rule 56 motions for summary judgment pursuant to Rule 12(d).  See January 16, 2009 Order

[docket item no. 37].  In light of the conversion of the motions, the Court accepted supplemental

submissions from the parties.  On March 12, 2009, the Court heard oral argument on the motions

for summary judgment.  For the following reasons, the Court grants the Student Defendants'

motion for summary judgment as to all claims except the defamation and false light claims

insofar as those claims are based on communications unrelated to the disciplinary proceedings,

which will be dismissed without prejudice for failure to state a claim upon which relief may be

granted and for lack of subject matter jurisdiction.  It grants summary judgment to the University

Defendants on Plaintiff's claims for violation of his federal due process and equal protection

rights and on Plaintiffs' state tort claims of defamation and false light based on communications

made in and related to the disciplinary proceedings.  The remaining claims against the University

Defendants arise under New Jersey state law, and the Court will dismiss them without prejudice

for lack of subject matter jurisdiction.  Thus, the portion of the University Defendants' motion

for summary judgment dealing with Plaintiff's claims under the New Jersey Civil Rights Act will

be denied.

I.    BACKGROUND

        This action was initiated by former dentistry student Phat Van Le after he was expelled

from UMDNJ and its Dental School for cheating.  Le contends that this disciplinary action was

taken in violation of his rights to procedural due process and to equal protection under the United

States Constitution and the Constitution of the State of New Jersey.  Though many facts

concerning Le's academic misconduct are contested, it is the disciplinary proceeding which was

2

pursued that forms the crux of this lawsuit. Whether Plaintiff in fact cheated or not is immaterial to the Court's evaluation of the merits of Plaintiff's claims.  The Court thus summarizes the pertinent facts of this case as follows:

On or about May 2, 2007, Defendant Dr. Conte, a professor at the Dental School, together with another faculty member, was proctoring a midterm exam for a course in Esthetic Dentistry. (When clarity requires, this exam will be referred to as the "May 2, 2007 exam.")  Plaintiff Le was among the students taking the exam.  According to Dr. Conte, he observed that Le and another student appeared to be looking at the examination of a student sitting in a row in front of them.  Dr. Conte announced to the class that cheating was not acceptable and warned the students to keep their attention on their own exam.  According to Dr. Conte, the unusual behavior ceased after he made this announcement to the class.  The other proctor, Dr. Paul Rosen, did not witness Le or any other student cheating during the examination.  Dr. Conte did not confront Le directly about the suspected cheating, either at the time of the exam or afterward.

After speaking with other students and his colleagues about the incident, Dr. Conte decided to report the behavior he observed during the May 2, 2007 exam.  On June 12, 2007, Dr. Conte submitted a formal written complaint against Le to Dr. Cecile Feldman, the Dean of the Dental School.   Based on Dr. Conte's complaint, Dean Feldman initiated a disciplinary proceeding against Le pursuant to UMDNJ's written policy on disciplinary procedures, entitled Student Rights and Responsibilities and Disciplinary Procedures (the "University Policy"). Dean Feldman sent Le a Notice of disciplinary charges dated June 20, 2007.  The Notice informed Le of Dr. Conte's allegations of cheating and stated that the matter was being referred to the Dental

School Hearing Body.  She attached a copy of the University Policy governing the hearing.  Le

signed a statement acknowledging his receipt of Dean Feldman's Notice on June 20, 2007.  A

separate Notice, also dated June 20, 2007, issued from Defendant Dr. Vitaletti, Chair of the

Hearing Body, advised Le that a hearing on the cheating charges against Le would be held on

June 27, 2007.  The Hearing Body's Notice incorporated by reference the June 12, 2007

complaint made by Dr. Conte, which regards his observations during the May 2, 2007 exam.  The

Hearing Body's Notice also referred Le to the University Policy governing the hearing and

detailed his rights in connection with the hearing.  It stated:

> In accordance with the UMDNJ Policy and Procedure 00-01-25-50:00,
> Student Rights, Responsibilities and Disciplinary Procedures, you may
> make a presentation concerning these charges and invite any witnesses you
> wish to have testify.  Legal Counsel are not permitted to appear at the
> proceedings of the Hearing Body, but may be present outside the hearing
> room and advise you at any time you wish.  You may have one person, a
> family member, faculty member or a student, present with you during the
> hearing.  This person may advise you, but cannot enter into the fact-
> finding exchange of the hearing unless directly addressed by the Hearing
> body.  The Hearing Body will listen to your presentation, ask you
> questions and then deliberate.

(Farber Cert., Ex. E.)  Le also acknowledged receipt of the Hearing Body Notice.  Because the

date set for the hearing fell during the final exam period, Le requested an adjournment to July 2,

2007, by which time that period would have concluded.  He explained in his request that the

scheduled dated posed a difficulty to the participation of two students, Sidney Sternberger and

Dahlia Michael, whom Le wished to call as character witnesses, due to final exams.  The

University denied the request, citing as reasons the University Policy regarding the deadline for

holding a hearing and the coordination of the hearing itself.  It suggested that if the witnesses

could not attend the hearing, they could put their statements regarding Le's disciplinary action in

4

writing.

The two-day hearing commenced on June 27, 2007 and continued on July 2, 2007.  The

sitting Hearing Body consisted of five members: Dr. Vitaletti, three other members of the

UMDNJ faculty and a UMNDJ student.  A court reporter was present and prepared a transcribed

record of the hearing.  Plaintiff and his non-attorney advocate, Sidney Sternberger, were in

attendance, as was the complainant, Dr. Conte.  The transcript reflects that Le was reminded that

he had the right to confer with an attorney outside the hearing room, either in person or by

telephone, at any time he wished.  The four Student Defendants named by Le in this lawsuit

testified as witnesses during the hearing.  Their testimony concerned their recollection of other

incidents in which they believed Le cheated while taking an Oral Medicine exam, and Oral

Surgery exam and a Neuroanatomy quiz.  Only the instance involving the Oral Medicine exam

had been reported by the observing student, Defendant Lehnes, to the course director and proctor.

Le called several of his own witnesses, including the two students whose scheduling conflict

prompted Le to ask for an adjournment and Defendant Dr. Zohn, who testified that he had

observed Le cheating on another occasion and had confronted him about it at the end of that

exam.  The witnesses were not put under oath.  Le submitted to the Hearing Body a statement

from the other proctor for the May 2, 2007 exam stating he did not observe any cheating.  He also

submitted documentation from Le's treating physicians to corroborate Le's defense against the

accusation, specifically that Le suffered from cervical and lumbar intervertebral disc syndrome

and myofascial pain. According to Le, this condition causes him to feel pain in his neck and

back, especially during long periods of sitting, and explains the unusual movements observed by

Dr. Conte.  The transcript reflects that during the hearing Le questioned witnesses he had called,

cross-examined adverse witnesses including the Student Defendants (by submitting the questions

to the Hearing Body) and engaged in active dialogue with the Hearing Body concerning the

evidence presented against him.


Following the hearing, the Hearing Body submitted its Findings and Recommendations to

Dean Barbara Greenberg in a memorandum dated July 18, 2007.[2]  Among other findings, the

Hearing Body concluded that

> After reviewing all of the information provided, the Hearing Body
> determined and voted unanimously that there was misconduct on the part
> of Student Doctor Phat Le as follows:
>
> That Mr. Le did in fact attempt to cheat and/or cheated on the May 2, 2007
> Esthetic Dentistry Midterm Examination by continually referencing the
> examination of another student seated in the row directly in front of him.
> The Hearing Body concluded that the unequivocal and direct observation
> testimony given by Dr. Nicholas Conte, a faculty member of the New
> Jersey Dental School Department of Restorative Dentistry, was completely
> credible.
>
> * * *
>
> During its deliberations, the Hearing Body concluded that Dr. Nicholas
> Conte's allegations were truthful and convincing, and were made as a
> result of his direct examination as well as thorough introspection and his
> recognition of their gravity and consequences.  There was overwhelming
> and convincing evidence of a pattern of similar unethical behavior over a
> sustained period, highlighted with direct and unequivocal observation by
> multiple members of the New Jersey Dental School academic community.
> Testimony by Student Doctors Braatz, McCrossan, Palmitesso and Lehnes,
> as well as that of Dr. Zohn, was considered completely credible and

---

[2] Dean Feldman designated Dr. Greenberg, Acting Associate Dean for Research, to render
the decision. Though the University Policy calls for the Dental School Dean to make a final
decision on the disciplinary action, Dean Feldman recused herself from the matter upon learning
that her husband, Dr. Zohn, had been called by Plaintiff as a witness.  Plaintiff was advised of
this designation.

> sustained the primary complaint with other examples of similar cheating
> behavior in the examinations of four other academic courses.  The totality
> of the testimony in fact revealed a disturbing and complete lack of
> understanding or appreciation for the ethical principles expected of a
> future health care professional.

(Farber Cert., Ex. H.)

The memorandum cited provisions of the University Policy violated by Le's conduct and

recommended that he be dismissed from the Dental School.  Pursuant to the opportunity

provided in the disciplinary process, Le submitted written objections to the Hearing Body's

Findings and Recommendations to Dean Greenberg on July 24, 2007.  Dean Greenberg rendered

her decision on August 13, 2007.  Finding that Plaintiff cheated on the May 2, 2007 Esthetic

Dentistry exam, Dean Greenberg dismissed Le from the Dental School.  Her written decision

states that in addition to reviewing all documents and party submissions, she also met with Le on

August 1, 2007, at which time he had an opportunity to provide any additional information he

considered relevant to the charges.  With the assistance of an attorney and pursuant to the

University Policy, Le appealed the decision to Dr. Denise Rodgers, UMDNJ's Executive Vice

President for Academic and Clinical Affairs.  On November 28, 2007, Dr. Rodgers issued a

decision affirming the expulsion.

Plaintiff filed this lawsuit in the United States District Court for the District of New

Jersey on February 25, 2008.  The Complaint asserts six causes of action against all Defendants.

Counts One through Four seek recovery pursuant to 42 U.S.C. § 1983 and the New Jersey Civil

Rights Act, N.J.S.A.10:6-1 to -2, for violations of Plaintiff's federal and state rights to procedural

due process and equal protection.  Counts Five and Six plead claims of defamation and false

light, respectively, under New Jersey law, alleging that Defendants purposely and maliciously

made false statements through their testimony.[3]

After a brief statement about the standard for reviewing motions for summary judgment, the Court will consider the motions filed the Student Defendants and the University Defendants in turn.

## II.   DISCUSSION

### A.   Summary Judgment Standard

The standard upon which a court must evaluate a summary judgment motion is well-established.  Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Kreschollek v. S. Stevedoring Co., 223 F.3d 202, 204 (3d Cir. 2000).  In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party.  See Boyle v. Allegheny Pennsylvania, 139 F.3d 386, 393 (3d Cir. 1998).  The moving party bears the burden of establishing that no genuine issue of material fact remains.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

Once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, the non-moving party "must do more than

---

[3] The Complaint, in fact, labels two claims as "Count Five."  This appears to be a typographical error, and so for purposes of clarity, the Court will refer to Count Five as the defamation claim and Count Six as the false light claim.

simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see also Anderson, 477 U.S. at 247-48. The Supreme Court has held that and Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)); Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied, 507 U.S. 912 (1993) ("to raise a genuine issue of material fact . . . the [non-moving party] need not match, item for item, each piece of evidence proffered by the movant," but "must exceed the 'mere scintilla' threshold").

**B.**     **The Student Defendants**

At oral argument, Plaintiff conceded that his claims under § 1983 and the New Jersey Civil Rights Act could not lie against the Student Defendants, who are indisputably not state actors. 42 U.S.C. § 1983; N.J.S.A. 10:6-2(c); Community Med. Ctr. v. Emergency Med. Serv., 712 F.2d 878, 879 (3d Cir. 1983); Wilson v. County of Gloucester, — F.Supp.2d —, 2009 WL 805179, at * 7 n. 13 (D.N.J. Mar. 30, 2009) ("Under both § 1983 and the New Jersey Civil Rights Act, plaintiffs must also prove that Defendants are state actors."). Accordingly, summary judgment on Counts One through Four of the Complaint is granted in favor of the Student Defendants.

As for the state tort claims of defamation and false light asserted against the Student Defendants, summary judgment will also be granted in the Student Defendants' favor. Those claims are premised on statements made by the Student Defendants in their testimony at Le's

disciplinary hearing.  The statements were made in aid of a quasi-judicial proceeding and are thus subject to absolute immunity from Plaintiff's claims of defamation and false light.

Under New Jersey law, the doctrine of absolute immunity applies to "any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." Hawkins v. Harris, 141 N.J. 207, 216 (quoting Silberg v. Anderson,786 P.2d 365, 369 (1990) and adopting California Supreme Court's articulation of the privilege). The New Jersey Supreme Court stressed that the immunity or privilege "is not limited to statements made in a courtroom during a trial" but rather "extends to all statements or communications in connection with the judicial proceeding." Id.  Whether a defendant is entitled to this privilege is a question of law. Id.; Waterloov Gutter Protection Sys. Co., Inc. v. Absolute Gutter Protection, L.L.C., 64 F.Supp.2d 398, 416 (D.N.J. 1999).

The Court finds that the disciplinary hearing underlying this lawsuit was a quasi-judicial proceeding.  The five-member Hearing Body, called upon to make a determination with regard to the charges of academic misconduct brought against Le, was acting in a manner similar to a court. Devlin v. Greiner, 147 N.J. Super. 446, 453-54 (App. Div. 1977).  Procedural safeguards indicative of the quasi-judicial nature of the proceedings were in place. Rainier's Dairy v. Raritan Valley Farms, Inc., 19 N.J. 552, 556 (1955).  Plaintiff received a notice of the charge and of the scheduling of a hearing. The University conducted a two-day hearing to inquire into the issue of whether Plaintiff cheated on the May 2, 2007 exam.  A court reporter attended to make a record of the hearing. Le had an opportunity to present evidence, call his own witnesses and cross-examine witnesses testifying against him.  He performed all of these activities.  Le was also

10

afforded the opportunity to suspend the proceedings at any time to consult with an attorney.  In addition, the proceedings were subject to appellate-style review, which Le in fact pursued, albeit unsuccessfully.  Contrary to Plaintiff's argument that Defendants have not established that adequate safeguards were in place and therefore a question of fact exists, the record shows that many of the conventional safeguards attendant to a judicial proceeding were present in the disciplinary proceedings.  Though Plaintiff underscores the lack of an oath to testify truthfully at the hearing, the absence of this safeguard is not dispositive of the question of whether the disciplinary proceedings were quasi-judicial.  Zagami v. Cottrell, 403 N.J. Super. 98, 106-107 (App. Div. 2008).  Further demonstrating their quasi-judicial nature, the proceedings served an important public interest in ensuring that future medical and dental professionals are fit and qualified to provide the services for which they will be licensed.

The Court also finds the other criteria of the Hawkins analysis have been satisfied.  The allegedly defamatory statements were made by the Student Defendants as participants in the hearing.  Though the Student Defendants' testimony concerned other incidents, the transcript and the Hearing Body's findings show that the testimony was offered as evidence consistent with the accusation of cheating on the May 2, 2007 exam and inconsistent with Le's defense. The statements were made for the purpose of determining whether Le cheated on the May 2, 2007 exam in violation of the disciplinary policy - that is in furtherance of the purpose of the hearing - and clearly have a connection to the disciplinary action brought against him.

Thus, the doctrine of absolute immunity shields the statements made by the Student Defendants at the hearing from giving rise to an action against them for defamation or false light. Summary judgment on those claims (Counts Five and Six) will accordingly be granted in favor of the Student Defendants.

To the extent the defamation and false light claims are based on statements made by the Student Defendants outside of the hearing and in some unrelated context, the claims must be dismissed without prejudice under Rule 12(b)(6) for failure to state a claim upon which relief may be granted.  Such a claim, assuming one is asserted in the Complaint before the Court, does not comply with the pleading requirements of Federal Rule of Civil Procedure 8.  The Complaint alleges that "Defendants . . . publicized false and defamatory statements that Plaintiff cheated on academic examinations as a dental student at NJDS to various members of the NJDS community, including administration, faculty and other dental students."  (Compl., ¶ 288.)  Insofar as Plaintiff proffers non-hearing statements as the actionable wrongdoing, the Complaint is vague and conclusory, and provides no notice whatsoever to Defendants.  Further, even assuming defamation and false light claims predicated on non-hearing communications are pled in the Complaint, the Court will decline to exercise supplemental jurisdiction over the claims pursuant to 28 U.S.C. § 1367(c)(3) and United Mine Workers v. Gibbs, 383 U.S. 715, 726-27 (1966).[4]

Thus, to the extent the Complaint asserted or attempted to assert defamation and false light claims against the Student Defendants based on non-hearing communications, those claims will be dismissed without prejudice.

_____

[4] The Court discusses in Section II.D., below, its loss of original jurisdiction upon the disposition of all federal claims in this lawsuit.

12

C.    **The University Defendants**

For the same reasons discussed above, the absolute immunity doctrine also precludes Plaintiff's defamation and false light claims against the University Defendants.[5]  Clearly, the statements of complainant Dr. Conte, witness Dr. Zohn and Hearing Body chair Dr. Vitaletti were made in connection with the disciplinary hearing and in furtherance of reaching a determination on the disciplinary charges brought against Le. The communications of these UMDNJ faculty cannot, moreover, give rise to liability against UMDNJ or the Dental School, which are public entities under the New Jersey Tort Claims Act.  N.J.S.A. 59:2-1, et seq.  The New Jersey Tort Claims Act provides that the public entity is subject to the same defenses available to a private person.  N.J.S.A. 59:2-1(b).  As the statements made at and in connection with the disciplinary hearing are immunized, summary judgment in the University Defendants' favor will be granted on the defamation and false light claims.

Next, the Court will address Plaintiff's § 1983 claims for violation of his federal procedural due process and equal protection guarantees.   Section 1983, which provides for civil redress of a constitutional violation by a person acting under color of state law.  That statute provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom or usage of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

---

[5] In addition, Plaintiff conceded at oral argument that he would not pursue the defamation and false light claims against Dr. Conte.

28 U.S.C. § 1983.  To establish a claim under section 1983, a plaintiff must demonstrate that the challenged conduct was committed by (1) a person acting under color or state law and (2) that the conduct deprived him of rights, privileges, or immunities secured by the Constitution or the laws of the United States.  See Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled in part on other grounds by Daniels v. Williams, 474 U.S. 327 (1986); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

Plaintiff argues that his procedural due process rights were violated in a number of ways. He contends that the charges brought against him were expanded, without notice, to include cheating other than on the May 2, 2007 exam, basing this theory on testimonial evidence given relating to other instances of cheating, on the Hearing Body's finding of a  "pattern" of cheating and on the Dean's determination that Le should be expelled for his violation of University Policy based on cheating on the May 2, 2007 exam and a pattern of unethical behavior.  Further, he maintains the scheduling of the hearing only seven days after notice of the hearing issued gave him an insufficient opportunity to prepare a defense, especially in light of the fact that it was scheduled during the final exam period.  Le also points to the fact that the other alleged instances of cheating were not reported within the time period required by the disciplinary policy and that no one instance of cheating, including the May 2, 2007 instance, was corroborated.   Le argues that the Hearing Body's findings and the penalty imposed were not supported by substantial evidence.  He also basis his claim for violation of procedural due process on the University Defendants' violations, according to Plaintiff, of their own rules and disciplinary policy.  Finally, Le maintains that his requests for access to exculpatory evidence were denied and that the appellate review process was inadequate.

Even viewing the evidence proffered by Plaintiff with respect to these alleged procedural due process violations in the light most favorable to him, Plaintiff fails to raise a genuine issue of material fact with regard to this claim. The record before the Court demonstrates that Plaintiff received adequate procedural due process under the Fourteenth Amendment. Under federal law, Plaintiff cannot, as a matter of law, demonstrate that the University Defendants deprived him of his federal right to procedural due process. It is well-established that the requirements of the Fourteenth Amendment's Due Process Clause apply to student disciplinary proceedings at public institutions. Goss v. Lopez, 419 U.S. 565, 572 (1975); Sill v. Pa. State Univ., 462 F.2d 463, 469 (3d Cir. 1972); Dixon v. Alabama State Bd. of Educ., 294 F.2d 150, 157 (5th Cir.), cert. denied, 368 U.S. 930 (1961). It is also well-established that the fundamental requirements of this right are notice and an opportunity to be heard. Goss, 419 U.S. at 579. With regard to disciplinary proceedings against a student, "due process requires notice and some opportunity for hearing before a student at a tax-supported college is expelled for misconduct." Sill v. Pa. State Univ., 318 F.Supp. 608, 620 (M.D.Pa. 1970), aff'd 462 F.2d 463 (3d Cir. 1972) (quoting Dixon, 294 F.2d at 158).

Clearly, notice was issued in this case. The University Defendants have submitted copies of the written notices issued by the Dean and by the Hearing Body of the disciplinary misconduct charges and the hearing scheduled to determine whether the misconduct occurred. They have also provided copies of the signed statements by Plaintiff acknowledging his receipt of the notices. Plaintiff attempts to raise an issue about the sufficiency of the notice by arguing that the charges for which he was judged and disciplined were expanded at the hearing to include instances of cheating in addition to the May 2, 2007 exam. Plaintiff's effort is unavailing. The

fact that testimony was offered with regard to other instances observed by the witnesses may

reasonably go to demonstrating that the charged incident occurred because it is consistent with a

pattern of behavior.  The testimony may be likened to "prior bad acts" evidence permitted in

criminal trials under Federal Rule of Evidence 404(b).[6]  It may also serve to discredit Plaintiff's

defense, that is, that his odd movements at the May 2, 2007 exam were due to a medical

condition.  Moreover, a significant amount of the testimony regarding the other instances of

cheating was offered at the first day of the hearing, June 27, 2007.  The hearing was continued to

July 2.  The six-day period between the first and second day of the hearing provided Plaintiff

with a reasonable opportunity to prepare a rebuttal to this evidence. He was given an additional

opportunity to address the evidence of what the Hearing Body termed a "pattern" of unethical

behavior in written exceptions provided to Dean Greenberg and in a meeting with her. The Court

finds that based on the evidence in the record, no reasonable factfinder could find that the notice

was inadequate under the Due Process Clause.

  The Court further finds that the incontrovertible proof shows that the hearing was more

than adequate to satisfy Plaintiff's due process guarantee. A fair hearing, in the due process

sense, does not require a formal proceeding in keeping with the model of judicial, adversarial

proceedings. Goss, 419 U.S. at 583; Dixon, 294 F.2d at 158-59.  Dismissing a procedural due

process claim brought by university students disciplined for misconduct, the district court in Sill

held that

---

   [6] Discussing the parameters of Rule 404(b), the Third Circuit noted that while prior bad acts evidence is inadmissible to prove that the defendant "acted in conformity therewith," "[character] evidence may ... be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." United States v. Jemal, 26 F.3d 1267, 1272 (3d Cir. 1994) (quoting Fed.R. Evid. 404(b)).

> the due process clause of the Fourteenth Amendment does not impose on
> universities any particular procedural model, whether it be derived from
> criminal, civil, or administrative proceedings.  Instead, the court should
> accept any institutional procedure so long as it is reasonably calculated to
> be fair to the student and to lead to a reliable determination of the issues.

Sill, 318 F.Supp. at 620; see also Gorman v. Univ. of R.I., 837 F.2d 7, 16 (1st Cir. 1988) (holding

that "the question is not whether the hearing was ideal, or whether its procedure could have been

better.  In all cases the inquiry is whether, under the particular circumstances presented, the

hearing was fair, and accorded the individual the essential elements of due process.")  Affirming

the district court, the Third Circuit noted that "'[n]o one has a vested right in any given mode of

procedure' . . Nor is the procedure required to afford due process of law of a fixed and invariable

character; the requirements of due process frequently vary with the type of proceedings involved.

Sill, 462 F.2d at 469 (quoting Crane v. Hahlo, 258 U.S. 142, 147 (1922)).

    The Court finds the analysis conducted by the First Circuit in Gorman to be instructive of

what process in connection with the discipline of a student by a public education institution

satisfies the student's constitutional protections.  See Gorman, 837 F.2d at 15-16.  There, a

disciplinary hearing was conducted by a hearing board consisting of one faculty member and five

students.  Id. at 10.  The student's request for permission to have legal counsel present at the

hearing had been rejected.  Id. at 11.  He was permitted to make a stenographic record of the

hearing at his own expense.  Id.  Moreover, the university provided an appellate process, and the

plaintiff had in fact appealed the hearing body's determination.  Id.  The Gorman court found that

the hearing comported with procedural due process requirements.  It rejected the plaintiff's

contention that the hearing body was not impartial and independent, finding that prior contact

between the participants in a university disciplinary hearing was a likely reality and did not

indicate, without more, bias compromising the fairness of the proceeding.  Id. at 15.  It also held

that the weight of authority provided no support for a student's right to have counsel present at

disciplinary hearings, unless there was a possibility of criminal charges based on the conduct.  Id.

at 16. Moreover, it also rejected the plaintiff's argument that limitations placed on his cross-

examination of witnesses rendered the proceedings unfair, reasoning that "the right to unlimited

cross-examination has not been deemed an essential requirement of due process in school

disciplinary cases."  Id.

    Similarly, in this case as in Gorman, the disciplinary process on which Plaintiff bases his

§ 1983 claim gave him "an opportunity to explain his version of the facts."  Id. (quoting

Ingraham v. Wright, 430 U.S. 651, 693 (1977) (White, J., dissenting)). The record before this

Court confirms that the disciplinary proceedings at issue contained an abundance of elements

satisfying the protections of the Fourteenth Amendment's Due Process Clause.  Plaintiff

participated actively in a two-day hearing before a five-person panel comprised of faculty and a

student.  A stenographer in attendance kept a record of the hearing.  Plaintiff presented evidence

in his defense, including calling his own witnesses.  He was able to cross-examine those

testifying against him by means of submitting questions to the Hearing Body.  A student

advocate accompanied Plaintiff throughout the proceedings and Plaintiff had the right to consult

an attorney at any time outside of the hearing room, a right the Hearing Body reminded him of at

the beginning of the hearing.  The record demonstrates that Plaintiff was given ample opportunity

to present his version of events to the Hearing Body.  Indeed, the Hearing Body closed the record

only after asking Plaintiff whether he had any other witnesses he wished to call and whether there

was "anything else" he wanted to tell the Hearing Body before it began deliberations.  Plaintiff

did not have anything to add.

Following deliberations, the Hearing Body issued its written Findings and Recommendations, explaining its position and the evidence on which it was based.  The Hearing Body credited the testimony of Drs. Conte and Zohn (who was called as a witness by Plaintiff) and of the Student Defendants, noted that Plaintiff sat calmly for the duration of the hearing without assuming any unnatural positions and found that based on the evidence Plaintiff had demonstrated "a disturbing and complete lack of understanding or appreciation for the ethical principles expected of a future health care professional."  (Farber Cert., Ex. H.)  It found Le guilty of the charge of cheating on the May 2, 2007 exam and found that his case demonstrated an exacerbating factor of a pattern of such behavior.  Based on these findings, the Hearing Body unanimously recommended that Plaintiff be dismissed from the Dental School.  Plaintiff was afforded the opportunity to submit to Dean Greenberg written exceptions to the Hearing Body's Findings and Recommendations.  He did so on July 24, 2007.  As set forth in her determination, Dean Greenberg considered the transcript of the hearing, documentary evidence submitted during the hearing, the Hearing Body's Findings and Recommendations and Plaintiff's exceptions. Before rendering her decision, she met with Plaintiff on August 1, 2007 to give him an additional opportunity to explain his side of the story and provide any new information on the matter.  She put her determination and its evidence-based reasons in writing on August 13, 2007.  Plaintiff was afforded and availed himself of a right to appeal the decision, which he did with the assistance of an attorney.  Dr. Rodgers, who would decide the appeal, accepted his September 17, 2007 appellate memorandum and met with Plaintiff on September 24, 2007.  She ultimately upheld Dean's Greenberg's decision.

Clearly, these undisputed facts regarding the disciplinary proceedings challenged as unconstitutional by Plaintiff establish, as a matter of law, that the process he was afforded exceeded the minimal standards of fairness.  In <u>Dixon</u>, a key case in the jurisprudence concerning Fourteenth Amendment procedural due process owed to students subject to dismissal from a public educational institution, the Fifth Circuit held that fairness requires a hearing permitting university authorities an opportunity to hear both sides, that the student be provided with the names of witnesses against him and with an oral or written report regarding their testimony, and an opportunity to present his own defense including oral or affidavit testimony by witnesses. <u>Dixon</u>, 294 F.2d at 159.  The <u>Dixon</u> court expressly stopped short of requiring the right to cross-examine witnesses.  <u>Id.</u>  Here, Plaintiff did not have to rely on a report of what adverse witnesses said but was present to hear their testimony and attack it by cross-examination.  Moreover, as the facts set forth above demonstrate, he had more than adequate opportunity to present his defense, during a two-day hearing which did not conclude until confirming that Plaintiff had nothing more to add and then again by presenting his side of the story to Dean Greenberg in writing and in person.

Though Plaintiff complains about the unfairness presented by the University's scheduling the hearing during exams and its failure to grant the adjournment requested by Le, his argument that the timing of the hearing deprived him of due process is not viable.  The University explained, in declining his request for an adjournment, that it needed to conduct the hearing within a defined period of time according to University Policy.  Moreover, Le's stated reason to the University for requesting the adjournment was the unavailability of two of his witnesses due to the conflict between the hearing and their final exam schedule.  As the record of the hearing

reflects, however, these two individuals attended the hearing and gave testimony on Le's behalf. In fact, one of the individuals served as Le's lay advocate. The failure to grant Le's request for an adjournment did not prejudice Le's defense and did not render the process afforded to Le constitutionally inadequate.

Plaintiff makes several allegations concerning the University's failure to provide him with various items of potentially exculpatory evidence, arguing that this poses a significant infirmity in the proceedings. The evidence Plaintiff claims that the University blocked him from obtaining mainly concerns the other incidents of cheating as to which certain witnesses testified. Plaintiff's argument on this point fails to raise a material issue of fact as to his due process claim for two reasons. One, it amounts to a re-iteration of his complaint that the hearing was improperly expanded beyond the terms of the notice to include charges of additional episodes of cheating. As discussed by the Court above, the "prior bad acts" evidence did not enlarge the charges. Two, allowing this alleged interference with discovery of relevant evidence by the University to cast doubt on the fairness of the process afforded Plaintiff, particularly in light of the abundant evidence to the contrary, would constitute an imposition by the Court of overly formal and adversarial requirements on the University's disciplinary process. The Supreme Court has explicitly cautioned against imposing trial-like procedures on public schools in dealing with their disciplinary matters. See Goss, 419 U.S at 583-84 (holding that, while an expulsion may require more formal procedures than a suspension, it is inappropriate to impose trial-type procedures for all disciplinary matters); see also Gorman, 837 F.2d at 16 ("on review, the courts ought not to extol form over substance and impose on educational institutions all the procedural requirements of a common law criminal trial"); Dixon, 294 F.2d at 159 (holding that a "full-dress

judicial hearing" is not required in connection with expulsion of student).

As for Plaintiff's allegations and proffered facts concerning the University's failure to follow several of its own rules, this alleged infirmity - even if assumed to be true for purposes of this motion - has no bearing on the Court's consideration of the merits of Plaintiff's claim that his rights under the United States Constitution were violated.[7] See, e.g., Jaksa v. Regents of the Univ. of Mich., 597 F.Supp. 1245, 1251 (E.D. Mich. 1984) (holding that state agency's disregard of its own regulation rises to level of constitutional violation only where failure to follow the rule independently impinges on due process rights). While these facts may be relevant to Plaintiff's claims under New Jersey law, whether Plaintiff's Fourteenth Amendment right to procedural due process was violated concerns the question of whether the process with which he was provided complied with the basic requirements of fairness. Clayton v. Trustees of Princeton Univ., 519 F.Supp. 802, 804, 810 (D.N.J. 1981); Sill, 318 F.Supp. at 620. The Honorable Harold A. Ackerman perceived this distinction between federal and state rights in Clayton, reasoning that because his case presented state law claims, he was not bound by Sill. Regarding the Princeton University's argument that it was entitled to summary judgment on the plaintiff's claim that he was not afforded a fair process, Judge Ackerman provided the following analysis:

_____

[7] Most of the rule violations Plaintiff alleges concern the failure to follow disciplinary protocol with regard to the other cheating instances as to which Dr. Zohn and the Student Defendants testified, such as the failure to report and address those instances within 10 working days of the event. The significance, if any, of these purported infractions presupposes the merit of Plaintiff's position that the disciplinary proceedings encompassed charges broader that cheating on the May 2, 2007 exam, which has been rejected by this Court.

> Princeton argues that a less rigorous standard should be applied and that the court should only determine whether Mr. Clayton was accorded basic procedural fairness. In applying this standard, Princeton argues that the court should not be unduly concerned with whether the University followed its written procedures as long as the procedures actually followed provided basic procedural fairness. In support of this standard Princeton relies upon such cases as <u>Sill v. Pennsylvania State University</u>, 462 F.2d 463 (3d Cir. 1972); <u>Wisch v. Sanford School, Inc.</u>, 420 F.Supp. 1310 (D.Del.1976); and <u>Edwards v. Board of Regents of Northwest Missouri State University</u>, 397 F.Supp. 822 (W.D.Mo.1975). It should be noted that the <u>Sill</u> case, which is a Third Circuit opinion, only discussed constitutional questions in a challenge to disciplinary procedures followed by a state university. It is not, therefore, binding upon this court's consideration of the common law relationship between a student and a private university.

<u>Clayton</u>, 519 F.Supp. at 804.

To the extent Plaintiff disagrees with the findings of the Hearing Body and with the Dean's determination based on those findings, his argument that they failed to consider certain exculpatory evidence and gave other evidence against him undue weight goes to the merits of charge. The matters of whether Plaintiff in fact cheated or not and whether his expulsion from the University was a warranted sanction are not before this Court. <u>Sill</u>, 462 F.2d at 470 (holding district court's role in reviewing fairness of disciplinary action was not to retry de novo the charges against students). While the law on procedural due process does require that the decision of student disciplinary proceedings be supported by "substantial evidence," that standard has clearly been met here. <u>Sill</u>, 318 F.Supp. at 621. "The substantial evidence standard is extremely deferential to the factfinder: 'Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Metropolitan Stevedore Co. v. Rambo</u>, 521 U.S. 121, 149 (1997) (quoting <u>Consolidated Edison</u>

Co. v. NLRB, 305 U.S. 197, 229 (1938)).  A reasonable mind could have found Plaintiff guilty of cheating based on the evidence before the Hearing Body.

In short, so long as the process made available to Plaintiff included notice and was reasonably calculated to afford him a fair opportunity to be heard - and the evidence before the Court demonstrates that those criteria of adequate due process were met as a matter of law - the Court should not interfere in the University's administration of matters, such as student expulsion for misconduct, wholly suited to the expertise of the University.  See Goss, 419 U.S. at 578.  Accordingly, summary judgment in favor of the University Defendants is warranted on Plaintiff's § 1983 claim for violation of his Fourteenth Amendment right to procedural due process.[8]

Plaintiff also bases his § 1983 claim on an alleged violation of his right to equal protection under the Fourteenth Amendment.  Plaintiff does not premise the claim upon a theory that he received disparate treatment due to his membership in a protected group but rather on a "class of one" theory.  Under this theory, the Equal Protection Clause provides a successful cause of action to one who has not alleged membership in a class or group but establishes that he or she "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  Village of Willowbrook v. Olech, 528 U.S. 562,

---

[8] In the interest of affording a thorough analysis of the viability of Plaintiff's claims, the Court notes that the Complaint does not appear to assert violation of substantive due process rights.  However, even if it somehow could be construed to plead such a claim, the claim would fail as a matter of law, as there is no evidence that the University Defendants' conduct "shocks the conscience."  United Artists Theatre Circuit, Inc. v. Twp. of Warrington, PA, 316 F.3d 392, 401 (3d Cir. 2003); see also Flaim v. Med. Coll. of Ohio, 418 F.3d 629, 643 (6th Cir. 2005) (holding that the plaintiff's expulsion failed to shock the conscience and accordingly dismissing his substantive due process claim).

564 (2000).  An essential element of this claim is the identification of at least one other

individual who is similarly situated to the plaintiff.  As argued by the University Defendants in

their papers and at oral argument, Le's claim fails as a matter of law because he does not identify

any similarly situated person treated differently by the University.  The Complaint alleges that

another student, who was also accused of cheating on the May 2, 2007 exam by Dr. Conte, was

not expelled.  However, there are material differences between Plaintiff and this other student.

As the very allegations made by Plaintiff state, this other student admitted to cheating on the May

2, 2007 exam.  (<u>See</u> Compl., ¶ 80.)  The record also fails to demonstrate that the other student not

only cheated on the May 2, 2007 but also, to render her similar to Le, exhibited a pattern of such

behavior.  Plaintiff cannot make a prima facie showing that the other student is similarly situated

to him.  Based on the facts as alleged by Plaintiff, Plaintiff cannot prevail on this equal protection

claim as a matter of law.  <u>Hill v. Borough of Kutztown</u>, 455 F.3d 225, 239 (3d Cir. 2006);

<u>Levenstein v. Salafsky</u>, 414 F.3d 767, 776 (7th Cir. 2005).   Accordingly, summary judgment for

the University Defendants will be granted on Plaintiff's § 1983 claim based on the Fourteenth

Amendment's Equal Protection Clause.

> **D.**     **<u>Dismissal of Remaining State Law Claims</u>**

This Court has now addressed all claims in the Complaint arising under federal law and

found that Plaintiff has failed to defeat Defendants' motion for summary judgment on these

claims. This Court will grant Defendants' motions for summary judgment as to all federal claims

in the Complaint.  The claims that have not been addressed are Plaintiff's claims against the

University Defendants under the New Jersey Civil Rights Act for violation of rights recognized

by New Jersey law and the state's constitution.  Federal subject matter jurisdiction in this case is

based on federal question.  28 U.S.C. § 1331.  As none of Plaintiff's federal claims will remain in

this action, this Court exercises its discretion not to retain supplemental jurisdiction over the

remaining state law claims. <u>See</u> 28 U.S.C. § 1367(c)(3) ("The district courts may decline to

exercise supplemental jurisdiction . . . [once] the district court has dismissed all claims over

which it has original jurisdiction"). The Third Circuit has explained that "once all federal claims

have been dropped from a case, the case simply does not belong in federal court." <u>New Rock</u>

<u>Asset Partners, L.P. v. Preferred Entity Advancements</u>, 101 F.3d 1492, 1504 (3d Cir. 1996)

(quoting <u>Lovell Mfg. v. Export-Import Bank</u>, 843 F.2d 725, 734 (3d Cir. 1988)). Nor are there

any circumstances present which would make the exercise of the Court's discretion to retain

supplemental jurisdiction appropriate. <u>See</u> <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 726-27

(1966) ("[I]f the federal claims are dismissed before trial, even though not insubstantial in a

jurisdictional sense, the state claims should be dismissed as well."). Pursuant to Federal Rule of

Civil Procedure 12(h)(3), the remaining state law claims in the Complaint will be dismissed for

lack of subject matter jurisdiction.   Accordingly, insofar as the University Defendants move for

summary judgment on the claims under the New Jersey Civil Rights Act, the motion will be

denied.


**III.     CONCLUSION**

        For the foregoing reasons, the Court will grant the Student Defendants' motion for

summary judgment at to all claims except the defamation and false light claims to the extent they

are predicated on communications unrelated to the disciplinary proceedings.  Their summary

judgment motion will be denied as to those claims, and they will be dismissed without prejudice

for failure to state a claim and for lack of subject matter jurisdiction.  The Court will grant in part and deny in part the University Defendants' motion for summary judgment.  The claims as to which the University Defendants' motion for summary judgment is denied will be dismissed without prejudice for lack of subject matter jurisdiction.  An appropriate form of Order will be filed herewith.

s/ Stanley R. Chesler
_____
STANLEY R. CHESLER
United States District Judge

DATED: May 4, 2009